**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| United States of America, )<br>)<br>        Plaintiff, )<br>)<br>vs. )<br>)<br>Kenneth McCloud, )<br>)<br>        Defendant. ) | **ORDER DENYING MOTION TO REDUCE SENTENCE**<br><br>Case No. 2:08-cr-00022 |

Before the Court is Defendant Kenneth McCloud's motion to reduce sentence filed on April 23, 2020. Doc. No. 62. On April 30, 2020, the Government responded in opposition to the motion. Doc. No. 64. McCloud seeks a reduction in his sentence to time served based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018 ("FSA"). For the reasons below, the motion is denied.

**I.    BACKGROUND**

On July 30, 2008, an information was filed that charged McCloud with abusive sexual contact, in violation of 18 U.S.C. §§ 2244(a)(5) and 1153.[1] Doc. No. 41. The information alleged that McCloud "did knowingly cause and attempt to cause T.H., a child under the age of 12 years, to engage in sexual contact, that is, the intentional touching with the hand of [McCloud] to the genitalia of T.H., not through the clothing, with the intent to abuse, humiliate, harass, degrade, and arouse or gratify the sexual desire of [McCloud]." Id.

Pursuant to a plea agreement, McCloud pleaded guilty to the information on July 30, 2008. Doc. No. 44. The plea agreement contained the following factual basis:

---

[1] McCloud was originally indicted on a charge of sexual abuse of a child, in violation of 18 U.S.C. §§ 2241(c) and 1153. Doc. No. 1. The indictment was dismissed at the time of sentencing pursuant to a Government motion. Doc. No. 50.

> [McCloud] is an Indian enrolled in the Turtle Mountain Band of Chippewa Indians. All actions that provide the basis for the charged offense occurred within the exterior boundaries of the Spirit Lake Indian reservation at the home of [McCloud's] girlfriend. The victim, T.H., was a child under the age of 12 years at all times [McCloud] engaged in sexual contact with her. At various times within the year of 2007, [McCloud] did touch, not through the clothing, the genitalia of T.H. with his hand with the intended purpose of satisfying the sexual desire of [McCloud].

Doc. No. 45, ¶ 6. The parties agreed that the base offense level was 30 pursuant to USSG §§ 2A3.4(c)(1) and 2A3.1(a)(2). Id. ¶ 13. They agreed that the following upward adjustments were applicable: a four-level increase for age of the victim (USSG § 2A3.1(b)(2)); a two-level increase for care, custody, or control of the victim (USSG § 2A3.1(b)(3)); and a two-level increase for a vulnerable victim (USSG § 3A1.1(b)(1)). Id. ¶ 14. The parties also agreed that no downward adjustments were applicable except three levels for acceptance of responsibility and timely notification pursuant to USSG § 3E1.1. Id. ¶ 15. The parties agreed to a joint recommendation of "an upward departure under 18 U.S.C. § 3553(b)(2)(A)(i) to a sentence of 240 months finding there exists a factual circumstance in this case that was not adequately considered by the Commission in formulating the guideline, that is, the on-going nature of the offense and more than one contact." Id. ¶ 17(a).

McCloud appeared before this Court[2] for sentencing on October 9, 2008. Doc. No. 48. The Court adopted the Presentence Investigation Report, which was consistent with the parties' calculations in the plea agreement. Id. With a total offense level of 35 and a criminal history category of I, McCloud's guideline range was 188 to 235 months. Id. As agreed in the plea agreement, the parties made a joint recommendation of an upward departure to 240 months. Id.

---

[2] The Honorable Ralph R. Erickson, then District Judge of the United States District Court for the District of North Dakota, now Circuit Judge of the United States Court of Appeals for the Eighth Circuit.

The Court followed the joint recommendation and sentenced McCloud to 240 months' imprisonment, finding that this was an ongoing offense involving more than one contact with a young victim. Doc. Nos. 48, 52. McCloud did not appeal or file a 28 U.S.C. § 2255 motion.

The Bureau of Prisons ("BOP") placed McCloud at FCI Forrest City Low in Arkansas. Now 68 years old, McCloud has served over 11½ years of his sentence and has a projected release date of August 9, 2025. Inmate Locator, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 9, 2020).[3]

McCloud purports to "suffer[] from the following chronic conditions related to the aging process: hypertension, diabetes, diabetic neuropathy, degenerative dis[c] disease, paresthesia, and claudication." Doc. No. 62, p. 5. These diagnoses are substantiated by medical records. See Doc. Nos. 62-3 and 62-4. McCloud also points to two admissions to the Forrest City Medical Center. On May 5, 2018, he was admitted to the medical center after complaining about numbness on his right side. Doc. No. 62, p. 6. The final report from that admission "indicates that McCloud suffered a cerebro-vascular accident as a result of basal ganglia and thalamic lacunar infarcts—a stroke." Id.; see also Doc. No. 62-5. On February 14, 2019, McCloud was again admitted to the medical center due to numbness on his right side. Doc. No. 62, p. 6. The final report from this second admission "states that while no infarct occurred that there was moderate decreased attenuation seen in periventricular deep white matter, likely as a result of small vessel ischemic changes. This was an ischemic event without infarction, but similar in effect: a near-stroke event with stroke-like consequences." Id.; see also Doc. No. 62-6. All in all, McCloud asserts that his

---

[3] Contrary to the BOP Locator, documents in the record show a projected release date of December 26, 2025. Doc. No. 62-2, p. 2; Doc. No. 64-1, p. 2  In any event, McCloud's projected release is in the second half of 2025.

ability to function in a correctional facility is substantially diminished by his medical conditions, limited ambulatory function, split vision, risk of fall injury, and significant risk of future strokes. Doc. No. 62, p. 7.

McCloud also raises concerns related to the COVID-19 pandemic. He asserts that he is "trapped and vulnerable to Coronavirus exposure" at a prison with "unsanitary conditions where social distancing is impossible in a confined area with one-hundred and fifty other prisoners in a prison with over 62 confirmed cases[4] of Coronavirus." Id. at 8. He claims that COVID-19 poses an extraordinary risk to him considering his age and medical conditions. Id. at 9.

McCloud submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at FCI Forrest City Low on January 21, 2020. Doc. No. 62-1. The warden denied the request on March 31, 2020. Doc. No. 64-1, p. 2. As of April 28, 2020, McCloud had not filed any administrative remedies pertaining to compassionate release. Id. at 1.

## II.   DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."[5] 18 U.S.C. § 3582(c)(1)(A)(I). The 18 U.S.C. § 3553(a) factors also must support the reduction. Id. The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

---

[4] As will be discussed later in this order, the number of cases has since increased significantly.
[5] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met. See 18 U.S.C. § 3582 (c)(1)(A)(ii). McCloud is 68 years old, so this avenue for relief is foreclosed.

### A.     Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

McCloud has met the exhaustion requirements of § 3582(c)(1)(A). More than 30 days have lapsed since the warden at FCI Forrest City Low received McCloud's January 21, 2020, compassionate release request. Further, the Government concedes that McCloud's motion is properly before this Court. Doc. No. 64, p. 3. The Court will thus proceed to the merits.

### B.     Extraordinary and Compelling Reasons

McCloud attempts to advance two extraordinary and compelling reasons for a sentence reduction. First, he asserts that he is "experiencing deteriorating physical health that substantially diminishes his ability to function in a correctional facility that which conventional treatment promises no substantial improvement to his physical condition." Doc. No. 62, p. 7. Second, he contends that the COVID-19 pandemic, in light of his underlying health problems and the extent of the outbreak at FCI Forrest City Low, renders him particularly vulnerable to serious illness while incarcerated. Id. at 8-9.

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons." Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). To meet its

5

statutory obligation, the Commission has promulgated USSG § 1B1.13.  The policy statement itself largely mirrors the compassionate release statute's language.  See USSG § 1B1.13(1)-(3).

More pertinent here is Application Note 1 to the policy statement.  So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release.  USSG § 1B1.13(2); id. cmt. n.1.  The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition, age, or family circumstances, respectively.  See id. cmt. n.1(A)-(C).  The final instance is set out in subdivision (D), the catch-all provision.  See id. cmt. n.1(D).  McCloud cites only to subdivision (D), but his motion also contains arguments that appear to rest on either subdivision (A) or (B).  Therefore, the Court will consider subdivisions (A), (B), and (D) in turn.

   1.   Medical Condition of the Defendant

The first example of an extraordinary and compelling reason provided by the Sentencing Commission in Application Note 1 relates to the medical condition of a defendant.  Application Note 1(A)(ii) states that an extraordinary and compelling reason for compassionate release exists when:

   (ii)   The defendant is—
      (I)   suffering from a serious physical or medical condition,
      (II)   suffering from a serious functional or cognitive impairment, or
      (III)   experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Id. cmt. n.1(A)(ii).[6]

Also instructive here is BOP Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("Program Statement 5050.50"), which guides wardens and other BOP officials in determining when extraordinary and compelling reasons exist. Section 3(b) of Program Statement 5050.50 appears to relate to subdivision (A) of Application Note 1 and reads in relevant part:

> b. **Debilitated Medical Condition**. RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:
>
> - Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
> - Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.
>
> The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function). A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

Program Statement 5050.50, § 3(b).

While McCloud claims to experience issues with ambulation and his medical conditions likely have some effect on his activities of daily living, he has not shown that he is completely disabled, confined to a bed or chair more than 50% of waking hours, or substantially limited in his ability to provide self-care. Thus, McCloud has not shown that his circumstances meet the criteria

---

[6] Application Note 1(A)(i) provides another example of a medical condition constituting an extraordinary and compelling reason: a terminal illness, *i.e.* "a serious and advanced illness with an end of life trajectory." USSG § 1B1.13 cmt. n.1(A)(i). None of McCloud's diagnoses appear to be terminal, so this example is inapplicable.

7

in subdivision (A).  Even if subdivision (A)'s medical condition criteria were met, however, his motion would fail on other grounds, as the Court will discuss later.

    2.    <u>Age of the Defendant</u>

The second example of an extraordinary and compelling reason given by the Sentencing Commission involves the age of the defendant.  Subdivision (B) states that an extraordinary and compelling reason for compassionate release exists when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

USSG § 1B1.13 cmt. n.1(B).  Again, Program Statement 5050.50 provides further guidance:

> b.  **Elderly Inmates with Medical Conditions**.  Inmates who fit the following criteria:
>
> - Age 65 and older.
> - Suffer from chronic or serious medical conditions related to the aging process.
> - Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
> - Conventional treatment promises no substantial improvement to their mental or physical condition.
> - Have served at least 50% of their sentence.
>
> Additionally, for inmates in this category, the BOP should consider the following factors when evaluating the risk that an elderly inmate may reoffend:
>
> - The age at which the inmate committed the current offense.
> - Whether the inmate suffered from these medical conditions at the time the inmate committed the offense.
> - Whether the inmate suffered from these medical conditions at the time of sentencing and whether the Presentence Investigation Report (PSR) mentions these conditions.

Program Statement 5050.50, § 4(b).

Subdivision (B) is a closer call.  At age 68, McCloud meets the age requirements of subdivision (B) as well as § 4(b) of Program Statement 5050.50.  As of March 12, 2020, McCloud

had served 11 years, 7 months, and 19 days, or 58.1% of his sentence—meeting the service requirement under both the Guidelines and the Program Statement. McCloud's medical records demonstrate diagnoses of several chronic or serious medical conditions that are often related to the aging process, including atherosclerosis, diabetes, hypertension, back pain, and degenerative disc disease. He also purports to have suffered from cataracts in both eyes. Thus, McCloud arguably has shown that he meets all three criteria of the extraordinary and compelling reason delineated in subdivision (B).[7] The Court will therefore proceed to analyze the remaining statutory and guideline requirements for compassionate release—whether the defendant poses a danger to other people or the community and whether the 18 U.S.C. § 3553(a) factors merit release. Before doing so, however, the Court will consider the final subdivision of Application Note 1.

3. Catch-All Provision

The catch-all provision found in subsection (D) authorizes a sentence reduction when "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG § 1B1.13 cmt. n.1(D). The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A). The policy statement still contemplates a motion for compassionate release originating solely from the BOP Director—clearly no longer the case. See USSG § 1B1.13. Seizing on this vacuum, several district courts have concluded that the discretion vested in the BOP Director under the

---

[7] Program Statement 5050.50 lists additional factors for consideration, including whether the medical conditions substantially diminish the defendant's ability to function in a correctional facility and whether conventional treatment promises no substantial improvement to the defendant's mental or physical condition. The Court has sparse information before it on these factors.

9

catch-all provision now belongs coextensively to federal judges.  See, e.g., United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019).  Other district courts disagree.  See, e.g., United States v. Lynn, CRIMINAL NO. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019); United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 2422601, at *2-3 (D.N.M. June 10, 2019); United States v. Shields, Case No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019).  Indeed, this Court recently determined that § 3582(c)(1)(A)'s plain language mandates adherence to the policy statement as written.  United States v. Rivera, Case No. 1:16-cr-00239 (D.N.D. Nov. 25, 2019).

Assuming arguendo that the Court possesses the authority to find other extraordinary and compelling reasons for purposes of this motion, McCloud presents a stronger case than most.  Program Statement 5050.50 expresses on a macro level that motions should generally be based on circumstances "which could not reasonably have been foreseen by the court at the time of sentencing."  Program Statement 5050.50, § 1 (quoting 28 C.F.R. § 571.60).  It goes without saying that at the time of sentencing, Judge Erickson could not have foreseen the unprecedented situation that federal prisons and inmates face in light of the COVID-19 pandemic.

McCloud raises legitimate concerns about COVID-19 that rise above the level of generalization.  Since McCloud filed his motion, the number of confirmed positive cases at FCI

Forrest City Low has risen from at least 44[8] to 512[9] current cases—the second most among federal prisons. See BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 9, 2020). According to the Centers for Disease Control ("CDC"), McCloud also faces an increased risk for severe illness from COVID-19 due to his age, diabetes, and hypertension. See People Who Are at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 9, 2020). However, while the Court is sympathetic to McCloud's concerns about COVID-19, the Court need not decide whether they would constitute an extraordinary or compelling reason because McCloud's motion ultimately falls short in other regards. See United States v. Hylander, No. 18-cr-60017-BLOOM, 2020 WL 1915950, at *2-3 (S.D. Fla. Apr. 20, 2020) (denying compassionate release where 66-year-old defendant had two underlying conditions but failed to show that he did not pose a danger and that § 3553(a) supported release); United States v. Moskop, No. 11-CR-30077-SMY, 2020 WL 1862636, at *2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where 72-year-old defendant had chronic medical conditions but § 3553(a) counseled against release).

### B. Danger to the Safety of Others or the Community

As previously mentioned, a reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). USSG § 1B1.13, the relevant policy statement, contains a requirement not directly stated in §

---

[8] McCloud claims that there were over 62 confirmed cases at the time of his motion. Doc. No. 62, p. 8. The Government disputes this statement, claiming that the BOP website only showed 44 positive cases as of April 29, 2020. Doc. No. 64, pp. 9-10.
[9] More specifically, 511 inmates and one staff member have active confirmed cases of COVID-19. 177 other inmates and three staff members have recovered.

3582(c)(1)(A): that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). "In making this determination, courts should consider '(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Hylander, 2020 WL 1915950, at *3 (quoting 18 U.S.C § 3142(g)). Section § 3142(g) specifically lists the involvement of a minor victim as an offense circumstance the Court should consider. 18 U.S.C. § 3142(g)(1).

McCloud argues that he is not a danger to the community as "a 68 year old man with limited mobility, weakened grip strength, and medical conditions that render him for all intents and purposes defenseless." Doc. No. 62, p. 9. The Court disagrees. McCloud pled guilty to abusive sexual contact and admitted to touching, not through the clothing, the genitalia of a vulnerable minor under 12 years old with his hand more than once and on an ongoing basis. This was a serious offense committed upon an entirely defenseless victim. While McCloud's health problems may make it more difficult for him to commit certain types of crimes, the Court's concern that McCloud might reoffend against another vulnerable young victim is not assuaged. McCloud has not provided any sex offender treatment records indicating he is no longer a danger, and he is a lifetime sex offender registrant due to the abuse he inflicted. As such, McCloud has failed to demonstrate that he would not pose a danger to any person or the community if released.

### C. 18 U.S.C. § 3553(a) Sentencing Factors

Lastly, the Court must "consider[] the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) requires the Court to consider:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed—
>
>   >   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   >
>   >   (B) to afford adequate deterrence to criminal conduct;
>   >
>   >   (C) to protect the public from further crimes of the defendant; and
>   >
>   >   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established [by the Guidelines]—
>
>   . . . .
>
>   (5) any pertinent [Sentencing Commission] policy statement—
>
>   . . . .
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

McCloud asserts that the § 3553(a) factors support compassionate release because he "has learned his lesson" and his "confinement no longer serves any peneological [sic] interest." Doc. No. 62, pp. 10-11. Again, the Court disagrees. McCloud's guideline range at the time of sentencing was 188 to 235 months. The Court departed upward to 240 months because the total offense level did not fully take into account the seriousness of the offense—namely the ongoing nature and multiple occurrences of sexual contact with a young, vulnerable victim. McCloud, however, has yet to serve even the low end of the applicable guideline range. McCloud also has

failed to present any evidence of rehabilitation since committing the offense to suggest that recidivism would be unlikely. The Court finds that the need to ensure adequate punishment, deterrence, and community protection, and to avoid unwarranted sentencing disparity outweighs any factors that may point in favor of a sentence reduction in this case. Therefore, the applicable § 3553(a) factors, taken as a whole, favor continued incarceration.

### III.   CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, McCloud's motion to reduce sentence (Doc. No. 62) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of June, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court